IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CHARLES PATRICK CHENEY
a/k/a PATRICK CHENEY,

        Plaintiff,

v.                                       16cv61 WPL/LF

FARMINGTON MUNICIPAL SCHOOLS,
TED LACSIEWIEZ, KELLY THUR,
DAVID GOLDEN, and LINDA SCHILZ,
individually and in their official capacities,

        Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION
FOR PARTIAL JUDGMENT ON THE PLEADINGS**

Defendants Farmington Municipal Schools and Piedra Vista High School supervisory personnel Ted Lacsiewiez, Kelly Thur, David Golden, and Linda Schilz ("Farmington Schools") filed a motion for partial judgment on the pleadings (Doc. 16) ("Motion"), which seeks to dismiss four of the five counts of Plaintiff Charles Patrick Cheney's First Amended Complaint (Doc. 1-1). Cheney filed a response (Doc. 18), and Farmington Schools filed a reply (Doc. 21). Having read and considered the briefing, case record, and relevant law, I grant the Motion and dismiss with prejudice Counts II, III, IV, and V of the First Amended Complaint.

**PROCEDURAL BACKGROUND**

In March 2015, Cheney filed a seven count complaint in state court against the Farmington Municipal Schools and five supervisory personnel for statutory violations and tort claims arising from his termination as the Piedra Vista High School drama teacher and theater manager. (Doc. 5 at 23-31.) Farmington Schools removed the case to federal court, alleging that

Count VI for injunctive relief asserted a violation of Cheney's Fourteenth Amendment Due Process rights. (Doc. 4 at 119.) United States District Judge William P. Johnson issued an order to show cause concerning whether the Court had subject matter jurisdiction to consider the case (Doc. 5 at 44), and later remanded after determining that "the face of the complaint d[id] not assert a basis for federal jurisdiction" (*Id.* at 54). After remand, the state court considered Farmington Schools' previously filed motion to dismiss. (*Id.* at 63.) The state judge dismissed a defendant and some of the counts and permitted Cheney to amend his complaint. (*Id.* at 107.)

### FIRST AMENDED COMPLAINT AND FACTUAL ALLEGATIONS

Cheney then filed his First Amended Complaint (Doc. 1-1), which is the subject of this order. It alleges five counts: a 42 U.S.C. § 1983 violation, wrongful termination in violation of the New Mexico School Personnel Act, wrongful termination, negligence and negligent supervision, and a request for injunctive relief. (*Id.* ¶¶ 40-57.) Cheney alleges that he began his employment with Farmington Schools in 2007 as a drama teacher and theater manager at Piedra Vista High School. (*Id.* ¶¶ 8, 15.) In February 2014, Cheney's newly assigned mentor informed him that he had until March 15, 2014 to submit his dossier. (*Id.* ¶¶ 10-12.) The sentence explaining the importance of the mentor and dossier is incomplete; it states that a mentor should be assigned, pursuant to New Mexico Public Education Department regulations, "at least one year prior to a teacher submitting his dossier required ." [sic] (*Id.* ¶ 10.) Cheney also inquired "whether he needed TESOL endorsement for continuing employment as a teacher" (*id.* ¶ 13), but the Amended Complaint does not define the acronym or explain its importance.

Cheney, also in February 2014, "informed his direct supervisor Ann Gattis that his dual positions were consuming at least 65-70 weekly of plaintiff's time and that he preferred to remain on as theater manager only." (*Id.* ¶ 18.) Cheney then met with "operations director

Lacsiewicz [sic], plaintiff's effective supervisor, who offered to keep plaintiff on as theater manager only for $40,000.00 annual salary." (*Id.* ¶ 19.)

"In April 2014, plaintiff was asked to resign his teaching position; plaintiff complied, in the belief that he did not have time to complete his dossier and TESOL licensing requirement, which [Defendant] Linda Schilz had told plaintiff was necessary for continued employment, which turned out not to be true." (*Id.* ¶ 20.) Later in April, Schilz told Cheney that he "must also resign his position as theater manager; plaintiff informed Schilz that he did not want to resign his position, but was told by Schilz that he had to resign, since the positions of drama teacher and theater manager had been combined into a single position." (*Id.* ¶ 21.)

"In Spring 2014," the newly hired principal, Defendant David Golden, "assured plaintiff he would regain his position as theater manager," but hired a new theater manager instead. (*Id.* ¶¶ 23-24.) Cheney had previously asked "school resource officer Ron Paquin what was really going on with regard t [sic] plaintiff's job; Paquin told plaintiff there had been numerous anonymous reports accusing him of partying with students and that the administration was tired of dealing with him and planned not to renew his contract." (*Id.* ¶ 28.)

After the school year, "Linda Schilz called plaintiff and informed him that his position had been filled and that the school was looking into allegations of misplaced money." (*Id.* ¶ 32.) The Farmington Police Department investigated, arrested Cheney for embezzlement, and issued a press release—published in the Farmington Daily Times as well as the Department's Facebook page—detailing the charges. (*Id.* ¶ 35.) "KRQUE [sic] News 13" also reported the charges after receiving an anonymous tip. (*Id.* ¶ 36.)

The Office of the District Attorney, however, later dismissed the charges, and the Farmington Daily Times "updated the original article on October 7, 2014, reflecting the

dismissal of charges and the [D]istrict [A]ttorney's conclusion that plaintiff had not engaged in any criminal activity." (*Id.* ¶¶ 37-38.)

Shortly after Cheney filed his First Amended Complaint containing these allegations, Farmington Schools again removed the case to federal court (Doc. 1) and filed their Motion under Fed. R. Civ. P. 12(c). Notably, Farmington Schools does not argue that Cheney's Amended Complaint contains insufficient facts to sustain cognizable legal theories. Instead, Farmington Schools focuses entirely on whether Cheney has a valid statutory basis to bring Counts II, III, and IV, and whether Count V has a valid basis in case law.

## STANDARD OF REVIEW

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). A motion for judgment on the pleadings is evaluated under the same standard as a motion to dismiss under Rule 12(b)(6). *Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1223 (10th Cir. 2009). Rule 12(b)(6) authorizes a court to dismiss a complaint in whole or in part for failing to state a claim upon which relief is available. Without weighing the evidence, the court must evaluate whether it is plausible, and not merely possible, that the plaintiff is entitled to relief under the relevant law. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-80 (2009); *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quotations and alterations omitted). In considering Rule 12(b)(6) motions, courts must look within the four corners of the complaint, accept all well-pleaded factual allegations as true, and determine if the plaintiff is plausibly entitled to relief. *Id.* at 678-79 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Christy Sports, LLC v. Deer*

*Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009). "Claims dismissed pursuant to a motion under [R]ule 12(c) are dismissed with prejudice." *Pena v. Greffet*, 110 F. Supp. 3d 1103, 1112 (D.N.M. 2015). "When granting Rule 12(c) motions, courts may give leave to amend and may dismiss causes of action rather than grant judgment." *Cheromiah v. United States,* 55 F. Supp. 2d 1295, 1298 (D.N.M. 1999) (citations and internal quotation omitted).

While the complaint need not include "detailed factual allegations," the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The factual allegations must also suffice to "inform the defendants of the actual grounds of the claim against them," with the degree of specificity required depending on the nature of the complaint. *Robbins*, 519 F.3d at 1248.

## DISCUSSION

**Threshold Issue: Voluntarily Resignation or Wrongful Termination?**

A threshold issue is whether Cheney willingly resigned or was improperly terminated. Cheney employs conflicting terminology in the Amended Complaint, which further complicates the issue. His fact section implies that he resigned his teaching position based on incorrect information from Defendant Schilz, and was forced to resign his theater manager position because both positions merged. (*See* Doc. 1-1 ¶ 20-21.) Later in the Amended Complaint, however, Cheney uses variations of the word "termination" when substantiating his causes of action. (*E.g.*, *id.* ¶ 47 "Defendants terminated plaintiff's employment without good cause . . . .")

Farmington Schools argues that Cheney resigned, but they do not discuss the issue in depth. They address it a total of three times: twice in the Motion and once in the Reply. In the Motion, they argue that "Plaintiff does state elsewhere in his [Amended Complaint] that he was terminated [Id. ¶ 18], but provides no additional factual support for this conclusory allegation."

5

(Doc. 16 at 2 (brackets in original).) The bracketed reference to paragraph 18, however, is likely a typographical error, because rather than discuss termination, paragraph 18 alleges that Cheney wished to resign his drama teacher position but retain his theater manager position. (*See* Doc. 1-1 ¶ 18.) The second reference in the Motion states "there is no breach of employment contract in Plaintiff's [Amended Complaint] since Plaintiff resigned his position with [Farmington Schools]." (Doc. 16 at 9.) Discussion in the Reply is equally brief, with Farmington Schools arguing that "Mr. Cheney appears to be alleging a state law due process violation, yet Mr. Cheney was not terminated, he resigned." (Doc. 21 at 2.)

On balance, the standard of review weighs in Cheney's favor because it is plausible that he was involuntarily terminated—whether by duress, coercion, or false pretenses. Though the fact section of his Amended Complaint could have been clearer, it appears to allege that he resigned under false pretenses, which means the resignation was involuntary. The word "termination" that appears throughout the Amended Complaint further bolsters this conclusion. Lastly, as a general matter, the Federal Rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson v. City of Shelby, Miss.*, -- U.S. ---, 135 S. Ct. 346, 346 (2014), so Cheney's lack of precision is not fatal to his case.

**Count I: "42 U.S.C. § 1983 VIOLATIONS–all Defendants"**

Cheney's first count, which is unchallenged by Farmington Schools, asserts a § 1983 claim for deprivation of rights secured "by the United States and New Mexico Constitutions and state law, including the right to procedural and substantive due process prior to termination of plaintiff's employment." (Doc. 1-1 ¶ 42.) Though not addressed by Farmington Schools, I include the text of Count I because I later conclude that Counts II and III duplicate it.

**Count II: "WRONGFUL TERMINATION IN VIOLATION OF THE NEW MEXICO SCHOOL PERSONNEL ACT-Defendant Farmington Municipal Schools"**

Cheney's second count alleges that "Defendant Farmington Municipal schools Wrongfully Terminated Plaintiff's employment in violation of 42 U.S.C. 1983 and the New Mexico School Personnel Act." [sic] (Doc. 1-1 ¶ 45.) Though this count mentions two statutes, Cheney does not further substantiate the § 1983 claim in the five paragraphs that comprise his explanation for Count II (*see id.* ¶¶ 44-48) or in the factual background of the Amended Complaint (*see id.* ¶¶ 8-39). Though Farmington Schools does not dispute that it can be found liable under § 1983, the reference to § 1983 in Count II is not accompanied by a reference to a custom, policy, or even an underlying federal right, and therefore is not cognizable. *See Duke v. Grady Mun. Schs.*, 127 F.3d 972, 981 (10th Cir. 1997) ("[W]e hold that school districts and their governing boards in New Mexico are not arms of the state, and they are accordingly not shielded by the Eleventh Amendment from liability for a § 1983 action in federal court"); *see also Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1188-89 (10th Cir. 2010) (summarizing that municipal liability under § 1983 requires a constitutional deprivation stemming from a policy, custom, final policymaking decision, or deliberate indifference to possible or actual injuries caused by the failure to train or supervise employees).

Instead of discussing both statutes, the supporting paragraphs for Count II focus entirely on a provision of the New Mexico School Personnel Act, NMSA 1978 § 22-10A-24(A), which Cheney argues stands for the proposition that "an employee with at least three consecutive years of employment may be terminated only upon just cause and after an opportunity to be heard prior to non-renewal of contract and to be given rights of appeal." (Doc. 1-1 ¶ 46.) His reference to subsection (A), however, is likely a typographical error, because subsection (A) lists the post-termination rights of an "employee with fewer than three years of consecutive service," whereas

7

subsections (C), (D), (E), and (F) list the post-termination rights of "an employee who has been employed by a school district or state agency for three consecutive years." § 22-10A-24(C).

Farmington Schools argues that the School Personnel Act claim should be dismissed because the New Mexico Tort Claims Act does not waive immunity to permit suit. (Doc. 16 at 7.) As case support, they cite *Rubio v. Carlsbad Municipal School District*, 744 P.2d 919 (N.M. Ct. App. 1987), for the proposition that "governmental entities are only liable within the limitations of the [Tort Claims Act, and] immunity was not waived for provisions of the School Personnel Act." (Doc. 16 at 7.)

Cheney responds that "[a]s amended, the current complaint alleges § 1983 violations through, among other things, violations of the School Personnel Act . . ." (Doc. 18 at 2.) He also concedes that *Rubio* is applicable, but cites *Daddow v. Carlsbad Municipal School District*, 898 P.2d 1235 (N.M. 1995), for the proposition that school districts, school boards, and school board members can be found liable under § 1983. (*Id.*)

Here, *Rubio* requires dismissal of the School Personnel Act claim, and *Daddow* is inapplicable. In *Rubio*, the trial court dismissed plaintiffs' complaint against the Carlsbad Municipal School District that alleged, among other things, negligent hiring and retention of a teacher who allegedly provided marijuana to students. 744 P.2d at 920. The New Mexico Court of Appeals affirmed, holding that the Tort Claims Act does not waive immunity for negligent hiring, negligent retention, or educational malpractice. *Id.* at 921. The court reasoned that: (1) Plaintiffs failed to cite an express waiver of immunity from the listed waivers in the Tort Claims Act, and (2) the limitation of waiver section in the Tort Claims Act, which qualifies the scope of the listed waivers, did not provide a stand-alone waiver. *Id.* at 921-22. The same reasoning applies here. Plaintiff did not cite a specific Tort Claims Act waiver provision in his Amended

Complaint or Response, and likewise fails to cite a provision in the New Mexico School Personnel Act that permits suit under the circumstances. Moreover, *Daddow* does not save Cheney's School Personnel Act claim because it addressed a different question, i.e., whether local school boards fall under the term "person" in § 1983 so as to give a discharged employee a cause of action. 898 P.2d at 1237. Indeed, *Daddow* does not discuss waivers under the New Mexico Tort Claims Act or the School Personnel Act.

Moreover, Cheney's argument that the New Mexico School Personnel Act violation alleged in Count II should not be dismissed because it informs the § 1983 claim in Count I (*see* Doc. 18 at 2) fails because it is duplicative. Said another way, the "right to procedural and substantive due process prior to termination" that Cheney alleges in Count I (Doc. 1-1 ¶ 42) is based on purported violations of the New Mexico School Personnel Act, so Count II fails to offer a new statutory allegation.

Cheney failed to plead facts to support his § 1983 claim and failed to cite law to support his New Mexico School Personnel Act claim. Accordingly, Count II is dismissed with prejudice.

**Count III: "WRONGFUL TERMINATION-Defendant Farmington Municipal Schools"**

Cheney's third claim alleges that "Defendants' actions in terminating plaintiff's employment were based on false Allegations [sic], pretextual [sic] and denied plaintiff the substantive procedural rights accorded to New Mexico teachers who have been employed with a school district for three consecutive years, as plaintiff was." (Doc. 1-1 ¶ 50.)

Farmington Schools' Motion argues that Cheney's claim fails because Cheney did not cite a waiver under the Tort Claims Act, Cheney's employment contract precludes a claim of retaliatory discharge under *Barreras v. State of New Mexico Corrections Department*, 62 P.3d 770, 776 (N.M. Ct. App. 2002), and Cheney fails to base his wrongful termination on an

underlying violation of public policy, which is required under *Aken v. Plains Electric Generation & Transmission Cooperative*, 49 P.3d 662, 665 (N.M. 2002). (Doc. 16 at 8.)

Cheney responds that "this count is based on violations of plaintiff's due process rights and not the Tort Claims Act." (Doc. 18 at 3.) Cheney does not, however, further explain how the due process violation alleged in Count III differs from the due process violation alleged in Count I. That is, Count I alleges a § 1983 violation based on, among other things, "the right to procedural and substantive due process prior to termination" (Doc. 1-1 ¶ 42), while Count III similarly alleges that Farmington Schools "denied plaintiff the substantive procedural rights accorded to New Mexico teachers . . . ." (*Id.* ¶ 50.) Count III, therefore, is duplicative of Count I.

In addition to being duplicative, Count III is also not cognizable because *Barreras* precludes a free-standing wrongful termination claim. In *Barreras*, discharged state corrections employees bypassed their administrative appeal to the State Personnel Board and instead filed a lawsuit in state district court alleging "breach of contract, retaliatory discharge, and violation of civil rights arising under the New Mexico Constitution." 62 P.3d at 772. The court concluded that plaintiffs' claims were barred as a matter of law and granted defendants motion for summary judgment. *Id.* The Court of Appeals affirmed, holding, among other things, that "[w]hen an employee is already protected from wrongful discharge by a contract, such as the requirement of just cause before termination, any claim of retaliatory discharge is unnecessary and inapplicable, because essentially it would duplicate rights already adhering to the employee under contract." *Id.* at 775 (internal quotation and citation omitted). Just as the state corrections employees "were clearly and explicitly protected from termination without just cause" by the State Personnel Act, so was Cheney by his contract and the "just cause" requirement in the School Personnel Act. (*See* Doc. 1-1 ¶ 30 "On the last day of the school year 2014, plaintiff was asked to turn in his

keys since his contract would not be renewed"); *see also* § 22-10A-24(D) ("A local school board or governing authority may not terminate an employee who has been employed by a school district or state agency for three consecutive years without just cause.").

Cheney concedes that he cannot bring this claim under the Tort Claims Act (*see* Doc. 18 at 3), but fails to cite a non-duplicative legal vehicle in his Amended Complaint or explain his intended legal vehicle in his response. Accordingly, Count III is dismissed with prejudice.

**Count IV: "NEGLIGENCE/NEGLIGENT SUPERVISION-all Defendants"**

Cheney's fourth claim alleges that "Defendants' actions, including failure to properly supervise plaintiff, failure to understand their own policies, failure to provide required training for teacher certification pursuant to state law, and failure to investigate whether plaintiff had engaged in any misconduct, much less criminal acts, breached the duty of ordinary care owed to others, including employees." (Doc. 1-1 ¶ 53.) Though the title reads "Negligence/Negligent Supervision," the substantive styling—one long sentence listing Farmington Schools' alleged supervisory failings and concluding with the phrase "breached the duty of ordinary care owed to others, including employees"—indicates that this is a negligent supervision claim. (*Id.*)

Farmington Schools' Motion argues that New Mexico courts have foreclosed claims of negligent supervision against public entities and employees. (Doc. 16 at 8.) They cite two cases as support: *Espinoza v. Town of Taos*, 905 P.2d 718, 722 (N.M. 1995), and *Pemberton v. Cordova*, 734 P.2d 254 (N.M. Ct. App. 1987).

Cheney responds that the ruling in *Kennedy v. Dexter Consolidated Schools*, 955 P.2d 693 (N.M. Ct. App. 1998), permits his claim, but also notes that "[t]o the extent that Count IV is construed to state a claim under the New Mexico Tort Claims Act, plaintiff is not opposed to an order that the claim must proceed solely under 42 U.S.C. § 1983." (Doc. 18 at 4.)

11

Under either legal theory—state law negligence or § 1983—this claim is not cognizable. The state law claim is foreclosed because, as Farmington Schools point out, Cheney must cite an explicit waiver of immunity from the Tort Claims Act to avoid dismissal, which he has not done. *See Espinoza*, 905 P.2d at 722 ("[W]e find no waiver of sovereign immunity for negligent supervision of children at a playground"); *see also Pemberton*, 734 P.2d at 256 ("If no specific waiver of immunity can be found in the Tort Claims Act, plaintiffs' complaint must be dismissed as to the governmental defendant.").

Likewise, the post hoc attempt to recast this as a § 1983 claim fails because mere negligence cannot sustain a § 1983 cause of action against supervisors or a municipal entity. *See J.W. v. Utah*, 647 F.3d 1006, 1012 (10th Cir. 2011) ("Plaintiffs' claim was essentially one of negligent supervision, which is insufficient to support a § 1983 claim"); *see also Brammer-Hoelter*, 602 F.3d at 1188-89. Moreover, Cheney's proffered authority—*Kennedy*—does not sustain this count. *Kennedy* addressed a § 1983 claim based on Fourth Amendment violations following the school employee led strip searches of two high school students. 10 P.3d 115, 117 (N.M. 2000). Analogy fails because "the factors necessary to establish a § 1983 violation depend upon the constitutional provision at issue," *Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010), and Cheney fails to allege any constitutional violation, let alone a Fourth Amendment violation.

Cheney seems to concede that he cannot bring this claim under the Tort Claims Act (*see* Doc. 18 at 4), and neither applicable law nor his case support sustain this count. Accordingly, Count IV is dismissed with prejudice.

**Count V: "INJUNCTIVE RELIEF-Defendant Farmington Municipal Schools"**

Cheney's fifth count alleges that "Defendant's [sic] termination from employment with Piedra Vista High School was conducted improperly, based on false allegations and bad motives and was [sic] violated plaintiff's due process rights." (Doc. 1-1 ¶ 56.) Cheney asks for "injunctive relief in the form of immediate reinstatement to his position with restoration of plaintiff's employment benefits as if he had not been terminated." (*Id.* at ¶ 57.)

Defendants Motion argues that Cheney "in essence has requested specific performance," which is improper because Cheney resigned and would otherwise have an adequate remedy at law. (Doc. 16 at 9.) Cheney does not address Farmington Schools' use of the phrase "specific performance," but instead responds that "monetary damages cannot adequately restore the plaintiff to the position he would have been in had he not been terminated, publicly pilloried, and rendered essentially unemployable in his chosen field." (Doc. 18 at 4.)

Because Count V alleges a violation of "due process rights" (Doc. 1-1 ¶ 56) and does not cite a specific statutory provision, I agree with Farmington Schools that Count V can be distilled into an equitable request for specific performance. Cheney's failure to cite a New Mexico case or statute in his response further supports this conclusion. (*See* Doc. 18 at 4.)

"[D]istrict courts retain substantial discretion in ordering specific performance," *Koch v. Koch*, 903 F.2d 1333, 1336 (10th Cir. 1990), and the discretion is "exercised in accordance with general principles of equity jurisprudence" *El Paso Nat. Gas Co. v. W. Bldg. Assocs.*, 675 F.2d 1135, 1142 (10th Cir. 1982). Under New Mexico law, the plaintiff "must allege that he has performed his part of the contract or that he is ready, able and willing to perform it," *Hilger v. Cotter*, 410 P.2d 411, 413 (N.M. 1966), as well as demonstrate that the "remedy at law . . . is inadequate." *United Nuclear Corp. v. Gen. Atomic Co.*, 629 P.2d 231, 252 (N.M. 1980).

Inadequacy exists when the remedy at law is not "as certain, prompt, complete, and efficient to attain the ends of justice as a decree of specific performance." *Id.* (citation and internal quotation omitted). In a suit for breach of an employment contract, "a decree of specific performance is generally a disfavored remedy . . . because it places the court in the difficult position of monitoring an ongoing and often sour relationship." *Croy v. Cobe Labs., Inc.*, 132 F. App'x 229, 231 (10th Cir. 2005) (unpublished) (citing *Williston on Contracts* § 67:102 (4th ed. 2004)).

Here, though Cheney's Response lists three reasons to justify specific performance—(1) termination, (2) public embarrassment, and (3) the inability to continue working in education (*see* Doc. 18 at 4)—his Amended Complaint only contains facts that reference (1) and (2). Though the result would likely be the same had Cheney explained (3), none of his pleadings describe his attempts to find another teaching position or the impediments he would face in his application process. Given that the Amended Complaint does not allege that recovery for termination or public embarrassment entails an uncertain damages calculation, specific performance is not appropriate under the circumstances. In addition, it is hard to imagine that Cheney's relationship with Farmington Schools has not soured given the alleged wrongful termination, the arrest, the media coverage, and the causes of action for false arrest, malicious prosecution, and intentional infliction of emotional distress alleged in the complaint (*see* Doc. 5 at 28-30).

Moreover, Cheney's proffered case support in his Response—*Malarkey v. Texaco, Inc.*, 983 F.2d 1204 (2d Cir. 2003) and *In re Pan Am. World Airways, Inc., Maternity Leave Pracs. & Flight Attendant Weight Program Litig.*, 905 F.2d 1457 (11th Cir. 1990)—does not help his argument. (*See* Doc. 18 at 4.) *Malarkey* was an age discrimination case involving, among other things, the anti-retaliation provision of the Age Discrimination in Employment Act of 1967,

which contains language authorizing courts to fashion equitable remedies if appropriate. 983 F.2d at 1214. *In re Pan Am.* is even less relevant; it was a Title VII sex-discrimination case about whether Pan Am's maternity leave policy was discriminatory. 905 F.2d at 1459-60. In short, analogy fails because these cases do not discuss teachers, New Mexico statutes, or facts bearing any similarity to those pled in this case.

Cheney fails to allege facts and make supporting arguments to demonstrate that specific performance is appropriate. Accordingly, Count V is dismissed with prejudice.

## CONCLUSION

Counts II, III, and IV of Cheney's Amended Complaint assert legal theories that are either not cognizable or redundant, and the facts as pled do not plausibly support the discretionary grant of specific performance sought in Count V. Therefore, Farmington Schools' Motion for Partial Judgment on the Pleadings (Doc. 16) is granted, and Counts II, III, IV, and V of Cheney's Amended Complaint (Doc. 1-1) are dismissed with prejudice.

IT IS SO ORDERED.

                                                                        William P. Lynch
                                                                       United States Magistrate Judge